# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ELIZABETH M.**[1]
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-355**   (Fam. Ct. Wayne Cnty. Case No. FC-50-2022-D-109)

**MICHAEL M.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Elizabeth M.[1] ("Wife") appeals the Family Court of Wayne County's August 6, 2025, Amended Final Divorce Decree, which denied her request for spousal support. Respondent Michael M. ("Husband") filed a summary response in support of the court's order.[2] Wife did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties were married in June of 1995 and had three children together, M.M., born November 1, 2005, and twins K.J.M. and K.E.M., born October 11, 2006. The couple last resided together on October 21, 2020.

Wife filed for divorce on April 20, 2022, alleging irreconcilable differences and seeking the marital home, child support, and spousal support. Her financial disclosure, also filed April 20, 2022, stated she had no income and had monthly expenses totaling $300 for gasoline and food. Husband filed his answer, counterpetition for divorce, and financial disclosure on May 4, 2022. He also alleged irreconcilable differences and a voluntary separation of the parties but alleged that Wife was guilty of cruel and inhuman treatment toward him and had committed adultery. His financial statement did not include a specific

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Wife is represented by Jon D. Hoover, Esq. Husband is represented by Juston H. Moore, Esq.

1

figure for his income and stated only that it varied. Husband also stated that Wife is able to work and has a work history, and that she left the marriage for another man.

The record reflects that Wife requested temporary spousal support at a February 15, 2023, hearing, which the family court denied after finding, in part, that it lacked enough information to grant the request. Specifically, the court found it could not analyze Wife's need or Husband's ability to pay.

At the next hearing on September 26, 2023, Wife's counsel introduced an exhibit detailing Wife's estimated monthly expenses if she had the financial resources to live independently. However, the expenses were only estimates because Wife had no income and was not paying rent, utilities, or any other bills after leaving the marital home. Husband continued to pay for Wife's cellphone and car insurance, and she was reliant on others for her needs. Husband paid all the joint marital expenses, was the sole provider for the parties' children, and sought to waive his right to receive child support from Wife.[3] Accordingly, Husband argued he could not afford to pay spousal support.

In an October 3, 2023, letter to counsel, the family court again denied requests for temporary spousal support. In the letter, the family court stated,

> [Wife] clearly has a need, but rather than pay her temporary spousal support and then have her pay child support, her phone, and half (½) of the marital debts from the award, it makes more sense on a temporary basis to order [Husband] be responsible for the marital debts, pay [Wife's] cell phone, and waive temporary child support.[4] The [c]ourt also continues to find it persuasive that [Husband] is solely financially responsible for meeting the parties' three (3) minor children's need – which, now includes orthodontic braces. It would not be appropriate at this time, to risk [Husband] not being able to meet the children's financial needs when that burden falls solely to him, simply to provide [Wife] temporary spousal support.

---

[3] The Supreme Court of Appeals of West Virginia has made clear that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." Syl., *Rebecca C. v. Michael B.,* 213 W. Va. 744, 584 S.E.2d 600 (2003); *see also* Syl. Pt. 3, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991).

[4] We note that despite Father's attempts to waive child support, the family court did not allow Father to do so. Instead, the family court set Mother's monthly child support obligation at $0, which is reflected in the final order on appeal.

2

The letter also mentioned that during the February 15, 2023, hearing, Wife's argument for temporary spousal support was couched in terms of being necessary to help her until she found a job. However, the family court observed that Wife,

> has yet to put any real effort into finding employment to help herself financially. Counsel . . . even acknowledged in February that [Wife] has a duty to get back on her feet but asked for assistance until presumabl[y] she was able to get back on her feet. Yet, at this most recent hearing, it was clear that she is unwilling to seek any type of employment.

The family court proceeded to a final hearing conducted February 22, 2024, and July 30, 2024, where it took testimony, evidence, and argument regarding the parties' assets, expenses, and child/spousal support. The court heard significant testimony and argument regarding Husband's income, which had not been produced in the initial financial disclosures because of his sporadic workload and variable income. During the February 22, 2024, hearing, the parties reviewed Husband's most recent pay stub, and the court attempted to extrapolate his yearly earnings. Husband testified regarding his monthly expenses and the costs associated with being the sole caretaker and provider for their three children. Husband argued that any expendable income he had was invested in the children's needs and he had nothing left over to pay towards spousal support.

During the proceedings, both parties asked to be awarded the marital home, which would require a significant equalization payment to the other party. Husband argued that Wife could not obtain financing or afford to buy him out because she was unemployed. Wife rebutted that she would "beg, borrow, and steal" to find the money to keep the marital home. Simultaneously, Wife renewed her request for spousal support and provided an updated and revised estimate of monthly expenses if she lived independently. Husband again objected to Wife's speculative financial need.

Wife was questioned at length about her lack of effort in seeking employment. Wife asserted that she was a stay-at-home mother for most of the marriage, had been out of the labor market for more than twenty years, and was not able to find work. She testified that she had only applied for one job since the parties separated in 2020. She alleged she went to a nearby convenience store and briefly trained for a cashier position but was sent home and told to try again after she had more experience. Husband's counsel countered that even high school students with no experience could find a job at a fast-food restaurant and make more than minimum wage. Furthermore, Wife's life experience as a stay-at-home parent gave her transferable skills in childcare and domestic tasks that qualified her for entry level work in janitorial services, food preparation, or similar employment, even as a means of defraying her cost of living.

During the final hearings, Wife was questioned about who assisted her financially while she had no income and she testified she depended entirely on the kindness of friends

and family for her survival. Wife admitted that she had been in an on-and-off romantic relationship with a man other than Husband since about October 2020, and that the man provided her food, gas and let her drive his car during the nearly four years she had been separated. Wife denied that she lived with the man or had ever spent a night at his residence. Instead, Wife testified that she mainly lived in a camper on the property of a long-time family friend, though she admitted the camper was within walking distance of the romantic partner's residence and belonged to his cousin.

During the February 2024 hearing, Wife testified that she sometimes drove the romantic partner's car to the minor children's high school or went with him while he worked there as a maintenance worker in order to see the children while they were at school. The family court acknowledged on the record that it had previously interviewed the parties' twin daughters *in camera* and took judicial notice of the children's testimony that they did not want Wife to come to their school to see them in that manner. During the July 2024 hearing, the court put some additional information on the record about the prior *in camera* interviews of the children and how they had hard feelings toward their mother and did not want to see her. The court noted that the children testified that toward the end of the parties' marriage, Wife spent a lot of time putting on makeup and getting dressed up to go out with her boyfriend in the evenings. The children testified that they cried and begged Wife to stay home with them, to no avail. Then later, the children were further upset and embarrassed when Wife started coming to their school with the man they identified as that same boyfriend.

As the family court reviewed the final presentation of evidence and argument related to spousal support, Wife's counsel expressly acknowledged that Wife was not seeking rehabilitative alimony but instead only sought either a lump sum or permanent alimony award. The court went through the twenty spousal support factors in West Virginia Code § 48-6-301 (2018)[5] and permitted the parties to state their arguments a final time.

---

[5] West Virginia Code § 48-6-301, titled "Factors considered in awarding spousal support and separate maintenance" provides, in pertinent part:

> (b) The court shall consider the following factors in determining the amount and duration of spousal support and separate maintenance, if any, to be ordered under the provisions of parts V and VI, § 48-5-1 et seq. of this code as a supplement to or in lieu of the separation agreement:
> (1) The length of time the parties were married;
> (2) The period of time during the marriage when the parties actually lived together as husband and wife;
> (3) The present employment income and other recurring earnings of each party from any source;
> (4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work

4

On October 9, 2024, the family court entered an order granting the divorce on the grounds of irreconcilable differences. The court awarded the marital home and other assets

experience, length of absence from the job market, and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of § 48-7-6 et seq. of this code, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support and separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

(6) The ages and the physical, mental, and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education, or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support and separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career, or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in § 48-6-301(b)(10) of this code;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because that party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Any other factors as the court determines necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support and separate maintenance.

5

to Husband and ordered him to pay Wife $62,171 to equalize the marital estate. Husband was named the primary residential parent for the parties' minor children, Wife was granted parenting time according to the previously established temporary parenting plan, and child support was set at $0 (Zero Dollars). Wife's request for spousal support was denied. The order included findings regarding the length of the parties' marriage and cohabitation, their incomes, educations, work histories, and ability to work. The order also found, among other things, Husband had established expenses and credible testimony that he had no extra money leftover at the end of the month; that the children's expenses deplete his monthly income; that he had a legal obligation to support himself and the children; that the court had previously treated fault in the marriage as a push, but "following the girls' description of events" found more fault with Wife than Husband; that Wife did not "see herself as someone who works" and was trying to rely on Husband for support; that if Wife truly needed money, she could get it because she had daily access to a car; and that it did not find Wife's testimony credible with respect to her relationship with the on-again off-again boyfriend, "largely due to the children's testimony . . . that their mother would follow [him] to work and would go to work with him."

Wife filed a motion for reconsideration of the October 9, 2024, final order in part, arguing that the family court erred and should reconsider the order because it miscalculated the findings on the equalization payment based on an inaccurate valuation of the marital home and improperly weighed numerous statutory spousal support factors. On August 6, 2025, the family court entered its Amended Final Divorce Decree, which substantively amended paragraph 18m, which originally stated that "this is not a rehabilitative alimony case." In the amended decree, the court found and concluded,

> m. That the Court did not give heavy consideration to rehabilitative alimony in this matter as rehabilitative alimony was not pursued by Ms. Maynard, through counsel; Ms. Maynard did not present any evidence of a likelihood that she could substantially increase her income-earning abilities within a reasonable time by acquiring additional education or training; Ms. Maynard exclusively pursued permanent alimony, and therefore the Court finds that this is not a rehabilitative alimony case;

It is from this amended order that Wife now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

6

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother asserts that the family court erred in its findings of fact as to the financial positions of the parties and abused its discretion in inappropriately weighing the spousal support factors to deny Wife permanent alimony. Wife submits that the family court stated in its October 3, 2023, letter to counsel that Wife "clearly has a [financial] need" and that Husband admitted that Wife was accustomed to their marital standard of living, which he provided as the sole breadwinner. Wife testified that she had no income, was dependent on charity post-separation, and produced documentary evidence of her anticipated monthly expenses of $1,500 per month. Husband testified that his monthly expenses were $4,960, inclusive of the children's expenses, which would leave him nearly $2,500 each month in disposable income. Wife further argues that their twins turned eighteen two days after the amended order was entered, and that Husband's legal obligation to support the children was then relieved. Accordingly, Wife opines that the family court erred in finding that Husband did not have the ability to pay spousal support and that the court did not adequately weigh or address the stunning disparities in the parties' income or ability to earn wages. Furthermore, Wife posits that the amended order fails to explain how the court's finding of fault against Wife affects the determination of spousal support, amounting to an abuse of discretion by the family court. Because the order does not make a specific finding of infidelity, Wife argues that the court's finding that Wife's testimony regarding her romantic relationship was not credible based on the children's testimony was too conclusory and not supported by the record. We disagree and find these arguments unavailing.

The Supreme Court of Appeals of West Virginia has consistently held that as long as the family court fully considers the mandatory statutory factors contained in West Virginia Code § 48-6-301, and the award of spousal support is within the parameters of reasonableness, a reviewing court should not disturb the award on appeal. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 410, 801 S.E.2d 282, 288 (2017). Moreover, it is within the sole province of the family court as factfinder to decide issues of credibility. *See id*. at 408-09, 801 S.E.2d at 286-87.

Here, the family court thoroughly analyzed all twenty spousal support factors and made detailed findings setting forth its reasoning for denying Wife's request for spousal support in its August 6, 2025, amended order. The court permitted the parties to present argument and testimony at the final hearing on the issue and outlined multiple factors that weighed in favor of denial. For example, the court noted that Wife never presented evidence of any actual monetary expenses and all her testimony and evidence regarding her amount of need was purely speculative. Additionally, the court found that Husband presented credible evidence and testimony regarding his monthly income and expenses showing that he depleted his income by paying joint marital expenses and debts, caring for

the parties' children, continuing to pay Wife's car insurance and cellphone bills, and yet wanted to waive child support from Wife. Moreover, the court found that Wife had the ability and opportunity to seek work yet had only applied for one job in the four years since the parties separated, did not see herself as someone who worked, was attempting to remain permanently financially reliant on Husband, and did not credibly testify about her romantic relationship outside of the marriage. The court also considered Wife more at fault for the dissolution of the marriage than Husband, based on the testimony of the children regarding Wife coming to their school with Wife's boyfriend.

This Court cannot set aside a family court's factual findings "unless [they are] clearly erroneous." A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Under the clearly erroneous standard, appellate courts cannot reweigh the evidence and reverse a family court's findings simply because it may have viewed the evidence differently. *See Mulugeta*, 239 W. Va. at 410, 801 S.E.2d at 288.

Here, Wife asks this Court to reweigh the evidence and rule in her favor. We decline to do so. Upon review of the amended divorce decree and the record below, we find that the family court took substantial testimony and evidence, thoroughly inquired of the parties, fairly analyzed all the evidence before it, and reached a reasonable conclusion as expressed in the order on appeal. Wife fails to demonstrate that the family court's findings were clearly erroneous or that the court abused its discretion by declining to grant her request for permanent spousal support.

Accordingly, we affirm the family court's August 6, 2025, order.

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White